JOSEPH H. POOR *vs.* ALBERT W. CHAPIN.

Piscataquis.   Opinion February 9, 1903.

*Attachment. Corporations. Levy and Sale on Execution. Vested Rights. Practice. Stat. 1821, §§ 2, 13. Stat. 1899, c. 115. R. S., 1840, c. 76, § 17, c. 94, § 34, c. 99, c. 114, c. 117. R. S., 1857, c. 46, § 32, c. 81, § 28. R. S., 1871, c. 46, § 32, c. 81, § 54. R. S., 1883, c. 46, § 20, c. 76, §§ 33, 42.*

By R. S., c. 46, § 20, the real and personal property of any corporation is liable to attachment on mesne process, and levy on execution, however it may have been under the earlier statutes.

By the repeal of the former limitations upon the right of attachment and seizure and sale on execution of lands of corporations, and the substituted provisions in R. S., of 1883, it is evident that the legislature intended to subject corporate lands to the same liability to attachment on mesne process as those owned by natural persons.

After a first, valid attachment of real estate has been made, followed by subsequent proceedings to judgment and sale according to law, a second attaching creditor takes nothing by purchase on his execution at a sheriff's sale, unless perhaps the right of redeeming from the sale on execution under the first attachment.

It is more necessary that the name of the party whose estate is attached should be correctly shown, by the records in the registry of deeds, than that of the attaching creditor.

Where the officer's return of an attachment of real estate filed in the registry of deeds gave the name of the defendant correctly, but gave only the initials to the plaintiff's name, *held;* that this was a sufficient compliance with the statute to create an attachment lien.

After an action has been defaulted and continued for judgment and is continued on the docket from term to term for several subsequent terms after judgment has been entered and so remains on the docket in fact, it will be presumed that there is sufficient reason for it so remaining on the docket.

There is no vested right in a particular form of remedy. There can be no cause of complaint, if a substituted remedy is given which does not abridge the usefulness of that existing at the time the right accrued. *Held;* that a sale of land on execution under Stat. of 1899, c. 115, is valid although the action was brought and the attachment made in 1896.

The plaintiff claimed title to land by virtue of a sale on execution in favor of the National Hide and Leather Bank against the Monson Maine Slate Company, made Feby. 9th, 1900. Real estate was attached on the writ in that case on March 23, 1898.

The defendant claimed title to the same land by virtue of a sale on execution in favor of Rodney C. Penney against the Monson Maine Slate Company, made June 11th, 1900. Real estate was attached on the writ in that case on September 14, 1896.

As the attachment in the Penney suit had not been lost at the time of the sale on execution in that case, the sale related back to the attachment and operated to carry the title then existing; and as the attachment antedated that in the bank suit, *held;* that the defendant acquired title superior to that of plaintiff.

On report.   Judgment for defendant.

Real action in which plaintiff and defendant each claim title to the property by sale upon executions against the Monson Maine Slate Company a corporation under the laws of Maine.

*J. B. Peaks,* for plaintiff.

At the time the attachments in this suit were made, there was no authority for the attachment of the real estate of manufacturing corporations on mesne process. At common law real estate of corporations could not be attached upon the writ. It, therefore, can only be done by virtue of a statute which authorizes such attachment. Counsel cited: *Gue* v. *The Tide Water Canal Co.,* 24 How. 257; *E. Ala. R'y Co.* v. *Doe, ex. dem. Visscher,* 114 U. S. 340. Counsel traced the statutory enactments of this State relating to attachment of interests in corporations and sales of land of manufacturing companies, beginning with Stat. 1821, c. 60, and in this connection cited: Stat. 1823, c. 221; Stat. 1831, c. 519, § 19; Stat. 1845, c. 143; R. S. of 1857, c. 76, § 38.

If any one of the requirements mentioned in R. S., c. 81, § 59, is neglected, then no lien is created by the attachment. The title to the suit in which was made the attachment under which defendants claim title, is Rodney C. Penney v. Monson Maine Slate Company.

Plaintiff claims that the names of the parties to that action were not properly returned to the registry of deeds by the officer, and further that no notice was given to the public of any existing attachment in favor of Mr. Penney.    The officer merely states the name of plaintiff to be R. C. Penney.    The writ gives it as Rodney C. Penney. In *Shaw* v. *O'Brion,* 69 Maine, 501, the officer in making his certificate of attachment named one of the parties as "Augusto" Moulton when the name of the corresponding party in the writ was Augustus Moulton, and the court there held that no valid lien was created by the attachment.    It cannot be argued that R. C. Penney is identical with Rodney C. Penney, for it is a well settled principle of law that the name of every person consists of one given name and one surname, and it will not be presumed that the initial letters of a name prove ipso facto identity of that person with another whose full name begins with the same initial letters.    In *Ellsworth* v. *Moore,* 5 Iowa, 486, the court say: "Whilst the Supreme Court knows judicially the judges of the different judicial districts of the State, and will presume in the absence of any showing to the contrary that the courts of the District Court are held by such judges, it cannot know that the attorney J. D. Thompson and the Honorable J. D. Thompson, Judge of the 13th Judicial District, are one and the same person."    To the same effect in principle is *Enewold* v. *Olsen,* 39 Neb. 59, 22 L. R. A. 573.

It was held in *Dutton* v. *Simmons,* 65 Maine, 583, that the certificate of the officer to the registry of deeds of the attachment of the real estate of Henry M. Hawkins, when the name of the defendant in the writ is Henry F. Hawkins, is such a misdescription of the person sued as will render the attachment void.

The object of the filing the certificate by the officer in the registry of deeds is to give notice to the public of the attachment, and an invalid or incomplete notice is the same as no notice.    *Swift* v. *Guild,* 94 Maine, 436.

It may be argued that it has been held by this court that the sale of real estate upon execution of Bertha J. Reynolds, where the defendant was named in the suit and in the attachment as Bertha Reynolds, was valid.    *Hill* v. *Reynolds,* 93 Maine, 25, 32.    But

in that case it was proved that Bertha Reynolds and Bertha J. Reynolds were the same person, by evidence aliunde. The rights of no third parties intervened, the suit in the real action being against the same party as the suit in the writ. No false notice was given to the defendant, she having been a party to both suits. And besides this, it has always been held that the middle name is no part of the name of a person, and that its omission is never fatal. 16 Am. & Eng. Ency. of Law, p. 114, Note 3. But using the initial of the given name is the same as though a false name had been used.

In *Bessey* v. *Vose*, 73 Maine, 217, the officer's return on the writ was dated October 5, 1876, at one o'clock P. M., and the certified copy returned to the registry of deeds is of return bearing date of October 18, 1876. The court held that the attachment created no lien.

The cases of *State* v. *Taggart*, 38 Maine, 298, 300, and *Commonwealth* v. *Gleason*, 110 Mass. 66, are where the foreman of a grand jury signed his name by initials, and are in principle like the case of *Ellsworth* v. *Moore*, supra.

The cases of *Collins* v. *Douglass*, 1 Gray, 167, and *Hubbard* v. *Smith*, 4 Gray, 72, are cases involving simply a question of identity where no innocent parties' rights are concerned.

The Supreme Court of Pennsylvania in *Crouse* v. *Murphy*, 140 Penn. 335, 12 L. R. A. 58, decided in 1891, that the record of a judgment against Daniel Murphy was not notice to one who took a conveyance from the debtor as Daniel J. Murphy. Although in that case it was admitted that Daniel and Daniel J. was the same person. The court in that case say: "As between Murphy and his creditor it would be a question simply of personal identity, but it is a purchaser who bought after a search of the records, and with no actual notice, who claims protection." And the court say: "In order to see the practical operation of such a holding we have looked into the city directory, and find that the name of Daniel Murphy, with various middle letters, and without any, occurs twenty times; but D is the initial of David, of Dennis, and of many other first names besides Daniel. To exhaust the possibilities as to D. Murphy would require searches running into the hundreds."

The presumption would be that the deputy sheriff made his return according to the statute, and according to the writ then in his hands, and when this plaintiff found no such writ in the court at Bangor, but did find a writ in favor of Rodney C. Penney, even if he supposed they were the same man, the presumption would still be that the first action wherein R. C. Penney was plaintiff was dropped and a new one commenced.

The doctrine of presumption is very strong in this case. The presumption is that public officers do their duties truthfully, legally and according to the record which they make; and when a person finds a return in the office of the register of deeds, made by an officer who says that the plaintiff in the writ was R. C. Penney, such person has no right to suppose, much less is he obliged to suppose, that a writ, which he finds in the clerk's office, where Rodney C. Penney is plaintiff, is the one upon which the certificate is returned into the office of the register of deeds. *Smith* v. *Smith,* 24 Maine, 555, 559; *Treat* v. *Orono,* 26 Maine, 217.

Counsel also contended that the name of the defendant corporation was not properly stated in the officer's return in the Penney suit. The officer names the defendant as "The Monson Maine Slate Company." He does not state that it is a corporation, nor that its place of business is at Monson. The Monson Maine Slate Company may be a copartnership as in *Haggett* v. *Hurley,* 91 Maine, 542, where a copartnership was called "The Rockland Lime Company." It is a very common thing for persons to do business as a copartnership under some such name.

Prior to the enactment of Stat. 1845, c. 143, it is impossible to find any authority for the sale of real estate of corporations in general on execution in this State. This statute is carried along unchanged through the various revisions and is incorporated into revision of 1883, c. 46, § 50, substantially as it was first enacted, and remained the same down to 1899, when the power to attach and sell real estate on execution was further extended by chapter 115 of the statutes of that year.

As appears by the case, the Penney attachment was made prior to 1899, to wit, on September 14, 1896. The execution sale, made in

attempted furtherance of this attachment, however, was on the 11th of June, 1900. Now had the Stat. of 1899, c. 115, never been enacted, it is certain that this attachment could have created no lien unless the officer in selling had followed strictly the provisions of R. S., c. 46, § 50; that is, the officer could not have sold the real estate of this or any other corporation on execution unless he had failed to find personal property sufficient to satisfy the execution and so certified in his return thereon.

The object of attaching property on mesne process is that it may be held to be seized and sold on the execution after judgment. Hence property which cannot be lawfully seized on execution cannot be lawfully attached. *Nichols* v. *Valentine*, 36 Maine, 322, 324; *Pierce* v. *Jackson*, 6 Mass. 242; *Badlam* v. *Tucker*, 1 Pick. 389; *Davis* v. *Garrett*, 3 Ir. (N. C.) 459.

No subsequent acts of legislature could render an attachment valid which was invalid when made, for the only statutes of this kind which could relate back to pending actions would be those affecting remedies merely, and not affecting rights.

Counsel also cited: R. S., c. 76, §§ 1, 43; c. 1, § 5; *Packard* v. *Richardson*, 17 Mass. 121, 122; *Rogers* v. *Goodwin*, 2 Mass. 475; *Holmes* v. *Hunt*, 122 Mass. 505; *Cummings* v. *Everett*, 82 Maine, 260; Stat. 1881, c. 80.; *Dyer* v. *Belfast*, 88 Maine, 140; *Deake's Appeal*, 80 Maine, 50; *Glenburn* v. *Naples*, 69 Maine, 68; *Folsom* v. *Clark*, 72 Maine, 44; *Torrey* v. *Corliss*, 33 Maine, 333; *Rockland* v. *Rockland Water Co.*, 86 Maine, 55; *MacNichol* v. *Spence*, 83 Maine, 87; *Chipman* v. *Peabody*, 88 Maine, 282; *Phinney* v. *Phinney*, 81 Maine, 450; *Peabody* v. *Stetson*, 88 Maine, 273.

*Henry Hudson* and *J. F. Sprague*, for defendant.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, PEABODY, JJ.

STROUT, J. This is a writ of entry to recover several parcels of land. Demandant claims title by virtue of a sale on execution issued upon a judgment in favor of the National Hide and Leather Bank against the Monson Maine Slate Company, made on the ninth

day of February, 1900. Real estate was attached upon the writ on March 23, 1898. Defendant claims title to the same lands by virtue of a sale on execution issued upon a judgment in favor of Rodney C. Penney against the Monson Maine Slate Company, made on the eleventh day of June, 1900. Real estate was attached upon the writ on September 14, 1896. The right of redemption from this sale had expired before the present suit was instituted. If the attachment in the Penney suit was duly perfected, and is valid, and the subsequent proceedings were according to law and while the attachment was subsisting, the demandant took nothing by his purchase from the sheriff, unless perhaps the right of redemption from the subsequent sale on the Penney execution.

It is very ably argued by the plaintiff's counsel that the statute in force when these attachments were made did not authorize an attachment of real estate of a mining and manufacturing company, which the Slate Company is.

The right to attach real estate upon a writ is purely a statutory right. Chapter 60, § 2, of the laws of 1821, provided that "rights in equity of redeeming lands mortgaged, reversions or the remainders" and the lands of "any turnpike, bridge, canal or other company incorporated by law with power to receive toll," might be attached on mesne process, but that statute included no other corporation, and by section 13, lands of incorporated banks could be taken on execution and sold, but an attachment of these on mesne process was not authorized. By the general repealing act in 1840, this statute was repealed, and in the chapter relating to corporations, R. S., of 1840,. c. 76, § 17, it was provided that "the corporate property of any company incorporated in this State"—"shall be liable to attachment on mesne process, and to be levied upon by execution" in the manner provided by chapters 99, 114 and 117. Chapter 94, § 34, provided that "the lands belonging to any manufacturing corporation"—"may be seized and sold on execution." Chapter 114, § 30, provided that all real estate liable to be taken on execution according to c. 94, may be attached on mesne process.

In the revision of 1857, all these statutes were repealed, and it was then provided that "all real estate liable to be taken on execution"

may be attached on mesne process.  R. S., 1857, c. 81, § 28.  But in the chapter on corporations, c. 46, § 32, it was provided that an officer having an execution against a corporation, could not levy upon its real estate, until he certified thereon that he was unable to find personal property of the corporation.  Under these provisions it may well be doubted whether an attachment of the land could be made on mesne process.  These provisions appear in substantially the same language in R. S., of 1871, c. 46, § 32, and c. 81, § 54.

But these provisions were repealed in the revision of 1883, and by c. 46, § 20, on corporations, it is provided that "the property of any corporation"—"are liable to attachment on mesne process and levy on execution for debts of the corporation in the manner prescribed by law."  This statute was in force when these attachments were made.  By the repeal of the former limitations upon the right of attachment and seizure and sale on execution of lands of corporations, and the substituted provision couched in such broad language, it is evident the legislature intended to subject corporate lands to the same liability to attachment on mesne process, as those owned by natural persons.  This intention is so manifest that we are not authorized to import into the language any of the conditions or limitations contained in previous statutes.

It is urged that the officer's return of attachment to the registry of deeds was insufficient to create a lien upon the land.  The suit was in favor of Rodney C. Penney.  The return to the registry followed the statute in every respect, except that it gave the name of the plaintiff as R. C. Penney.  The object of the return is to give notice to parties investigating title of an attachment.  This return showed an attachment of the real estate of the Monson Maine Slate Company—the important fact to the party examining the title of the Slate Company.  When the examiner went to the clerk's office to ascertain if the suit on which the attachment was made was pending, he would find a suit against the company in favor of Rodney C. Penney.  It can hardly be conceived that in such case the seeker would be deceived.  On the contrary, he would have ample notice of the attachment of the real estate of the Slate Company, and a pending action.  This is all the statute contemplates, and all that is useful to the investigator.

The cases cited are of wrong names of the defendant. It is much more necessary that the name of the party whose estate is attached should be correctly shown by the records in the registry of deeds, than that of the plaintiff. Whose estate is attached is the vital question—it is immaterial by whom it was attached, if enough is stated to enable the suit to be understandingly traced on the docket of the court. We think this condition was met by the return here, and that the attachment was perfected.

Judgment in the Penney suit was rendered at the April term of the Supreme Judicial Court, 1900. Execution duly issued, and the officer seized the lands on the fourth day of May, 1900, within thirty days after the rendition of judgment, and after giving the notices required by law, sold them to the defendant on the eleventh day of June, 1900, and gave a deed thereof in due form which was duly recorded.

It is objected that as the defendant was defaulted at the January term, 1897, and the action was thence continued for judgment to the succeeding term in April, and no docket entry of farther continuance for judgment at that term, the judgment should have been rendered then. If it had been, the lien of the attachment would have expired before the seizure was made on the execution in 1900. The docket shows that the action was upon it at the January term, 1900, and thence continued for judgment to the April term, following, when judgment was in fact entered. The statute preserves an attachment for thirty days after judgment. For what reason the action remained on the docket from the April term, 1897, to the April term, 1900, does not appear, but it must be presumed that there was a sufficient reason for it. It did in fact so remain, for which various legal causes may be supposed. We cannot assume that it improperly remained.

It is also objected that the sale on the execution was made under c. 115 of the laws of 1899, which was not in force when the attachment was made, and it is urged that the remedy existing at the time of the attachment was a vested right in the plaintiff, which must be preserved on the final process. It is sufficient to say that the officer in making the sale followed the direction of R. S., c. 76, § 33. The

sale of land on execution was authorized by sect. 42 of the same chapter.

But if the sale had been under the act of 1899 it would be good. There is no vested right to a particular form of remedy. If a substituted remedy is given, which does not abridge the usefulness of that existing at the time the right accrued, there is no cause for complaint. The act of 1899 in no way defeated, limited or abridged the creditor's remedy existing under the law when his attachment was made. *Somerset Railway* v. *Pierce*, 88 Maine, 91; *Atkinson* v. *Dunlap*, 50 Maine, 116; *Oriental Bank* v. *Freese*, 18 Maine, 109, 112, 36 Am. Dec. 701.

The sale on the Penney execution related back to the date of attachment on the writ, which was long prior to the attachment on the writ of the Hide and Leather Bank. Under it, the defendant acquired title and the demandant has none.

*Judgment for defendant.*